**CLERK'S OFFICE**
**A TRUE COPY**
Apr 27, 2021
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.    21    MJ    110
)
Information That is Stored at Premises )
Controlled by Google )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

    See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ❐ contraband, fruits of crime, or other items illegally possessed;

    ❐ property designed for use, intended for use, or used in committing a crime;

    ❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 844(i), 844(h), 924 (c)(1)(A)(ii), 1951(a), and 2(a) | Use of Fire to Damage Property Used in Interstate Commerce; Use of Fire in Furtherance of a Federal Felony; Brandishing a Firearm During a Crime of Violence; Hobbs Act Robbery; and Aiding and Abetting |

The application is based on these facts:

    See attached Affidavit

    ❐ Continued on the attached sheet.

    ❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF, cn=RICKY HANKINS, 0.9.2342.19200300.100.1.1=1500100169456
Date: 2021.04.27 13:59:14 -05'00'

ATF SA Rick Hankins
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

    telephone _____ *(specify reliable electronic means).*

Date:    April 27, 2021 _____

_____
*Judge's signature*

City and state:    Milwaukee, WI _____

Hon. William E. Duffin, US Migistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Rick Hankins, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1.      I am a Special Agent of the United States Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

2.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

3.      In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 275 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International

1

Association of Arson Investigators since June 2011. I have received over 1,400 class hours of fire related training. Furthermore, I have been an instructor regarding fire-related topics on 38 occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 200 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

4.     I have previously applied for and received search and arrest warrants related to the crimes of arson and robbery, as well as other crimes.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based upon the information described below, I submit that probable cause exists to believe that persons known and unknown committed the crimes of armed robbery and arson in violation of Title 18 United States Code, Section 1951(a) (Hobbs Acts robbery); Title 18, United States Code, Section 924(c)(1)(A)(ii) (Brandishing a firearm during a crime of violence); Title 18, United States Code, Section 844(i) (Use of fire to damage property used in interstate commerce); Title 18, United States Code, Section 844(h) (Use of fire in furtherance of a Federal felony); and Title 18, U.S.C., Section 2(a) (Aiding and abetting). I further submit there is also

2

probable cause to search the information described in Attachment A for evidence of these crimes, further described in Attachment B.

**JURISDICTION**

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY**

8.      Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

9.      I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

3

10.     Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality.  Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones.  Bluetooth uses radio waves to allow the devices to exchange information.  When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

11.     Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology.  Using this technology, the device can determine its precise geographical coordinates.  If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

12.     Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android.  Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

13.     In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube).  Many of these services are accessible only to users who have signed in to their Google accounts.  An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of

4

a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

14.     Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

15.     Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

16.     According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

5

17.     Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device.  Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data.  Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

18.     Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default.  A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History.  A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application.  When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising.  As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

6

19.     Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

20.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

21.     Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other

7

log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## **PROBABLE CAUSE**

22.    Between April 6, 2021 and April 18, 2021, the Milwaukee, West Allis, and Wauwatosa Police Departments investigated three armed robberies, an attempted armed robbery, two vehicle thefts, and two vehicle fires. Facts and circumstances surrounding the aforementioned crimes lend to the likelihood that the same actors are responsible for most, if not all, of the crimes.

23.    For purpose of this affidavit, each crime scene will be assigned a number that corresponds with a specific location detailed in Attachment A.

### Location 1

24.    On April 4, 2021, a Wauwatosa resident reported her 2020 grey Kia Optima (WI plate #205-YXK) had been stolen from her residence located at 4636 North 118th Street in Wauwatosa, Wisconsin. The theft occurred between the hours of 11:00PM on April 3, 2021 and 8:40AM on April 4, 2021. The theft victim reported hearing some noises outside her residence around 12:00AM. Reports of this incident are filed under Wauwatosa Police Department Incident #21-006039.

### Location 2

25.    On April 6, 2021, at approximately 11:41AM, the stolen Kia Optima (WI plate #205-YXK) was used during an attempted armed robbery at the Community Financial Services

8

Center located at 2636 West Fond du Lac Avenue, Milwaukee, Wisconsin. The suspect vehicle was in the parking lot of the Community Financial Services Center from approximately 11:36AM to 11:42AM, according to surveillance video. Reports of this incident are filed under Milwaukee Police Department Case #21-0960091.

Location 3

26.     A subsequent query of an Automated License Plate Reader system showed that the Kia Optima (WI plate #205-YXK) was captured when it was parked in front of 2978 North 38th Street at 11:56AM on April 6, 2021.

Location 4

27.     On April 6, 2021, at 1:04PM, the Kia Optima (WI plate #205-YXK) was reported on fire behind 4519 West Burleigh Street, Milwaukee, Wisconsin. Reports of this incident are filed under Milwaukee Police Department Case # 21-0961209.

Location 5

28.     Also on April 6, 2021, a 2019 Kia Forte (TX plate #LLK6019) was reported stolen from 3817 North 35th Street, Milwaukee, Wisconsin. The theft occurred between 8:30PM and 9:15PM. The 2019 Kia Forte is owned by Avis Car Rental and is used in interstate commerce.

Location 6

29.     On April 13, 2021, at approximately 12:20PM, the 2019 Kia Forte (TX plate #LLK6019) was used during an armed robbery of a T-Mobile store located at 1308 West Lincoln Avenue, Milwaukee, Wisconsin. The two robbery victims, employees of the store, stated that two men armed with handguns entered the store, threatened to shoot them, and took numerous iPhones as well as cash from the store. Video footage collected from the T-Mobile as well as

9

businesses and buses in the area of the store at the time of the robbery captured the suspects arriving and departing in the 2019 Kia Forte (TX plate number #LLK-6019). The car was driven by a third suspect. Reports of this incident are filed under Milwaukee Police Department Case #21-1030086.

<u>Location 7</u>

30.     On April 14, 2021, at approximately 10:25AM, the 2019 Kia Forte (TX plate #LLK6019) was reported on fire located behind 3140 North Palmer Street, Milwaukee, Wisconsin. Members of the Milwaukee Fire Department informed officers that the fire was an arson. Reports of this incident are filed under Milwaukee Police Department Case #21-1040083.

<u>Location 8</u>

31.     On April 18, 2021, at approximately 2:35PM, the Milwaukee Police Department responded to an armed robbery in progress at a T-Mobile store located at 2210 West Wisconsin Avenue, Milwaukee, Wisconsin.  A victim in this armed robbery, a store employee, said two men entered the store with handguns asking for Apple products. They took cell phones and cash from the store. The Milwaukee Police Department apprehended one suspect during this armed robbery who fled on foot, Lamont W. CHAPPELL (B/M, DOB: XX/XX/2002). CHAPPELL was wearing latex gloves when he was apprehended. Officers located a .45 caliber Smith & Wesson M&P Shield pistol, S/N HDJ4544 that CHAPPELL discarded while attempting to evade police officers. A second suspect fled the area in a Kia Sportage (WI plate #742-GFK).

32.     Investigators subsequently interviewed CHAPPELL and CHAPPELL confessed to his participation in the armed robbery at 2210 West Wisconsin Avenue, as well as the armed robbery at 1308 West Lincoln on April 13, 2021.  CHAPPELL further stated the 2019 Kia Forte (TX plate #LLK6019) was burned by another co-actor after the robbery on West Lincoln Avenue

10

to get rid of "fingerprints." Reports of this incident are filed under Milwaukee Police Department Case # 21-1080124.

33.     During the same interview, CHAPPELL also identified the other individual involved in the West Wisconsin Avenue and West Lincoln Avenue robberies as Uriel CERVANTES (DOB: XX/XX/2004). CERVANTES was arrested on April 22, 2021. Immediately before his arrest, he was driving a 2018 Nissan Pathfinder, which police confirmed was stolen. CERVANTES fled on foot but was apprehended and arrested. Police located an iPhone in the Pathfinder and obtained a search warrant to view its contents.

34.     Among other evidence located on the iPhone, police recovered photos and videos of CHAPPELL, CERVANTES, and other suspected co-actors together, possessing firearms. The iPhone also contains a short video that shows several iPhones in their original boxes being loaded into what appears to be a blue bag. The location data associated with that video indicates that the video was recorded on the same block where police recovered a Kia SUV, which police suspect was involved as the "switch car" in the April 18 robbery at the T-Mobile on Wisconsin Avenue.

Location 9

35.     On April 18, 2021, at approximately 5:27PM, the West Allis Police Department responded to an armed robbery at a T-Mobile store located at 7001 West Greenfield Avenue in West Allis, Wisconsin.  Multiple iPhones and other items were taken during the robbery.  The two armed robbery suspects fled the area in a Kia SUV. Reports of this incident are filed under West Allis Incident #21-012213.

36.     In my training and experience, criminal co-actors often carry their mobile devices, including during robberies, in order to communicate with co-actors during the commission of the crime.

37.     Based on the foregoing, I submit that there is probable cause to search information that is currently in the possession of Google and that relates to the devices that reported being within the Target Location described in Attachment A during the time period described in Attachment A for evidence of the crime(s) under investigation. The information to be searched includes (1) identifiers of each device; (2) the location(s) reported by each device to Google and the associated timestamp; and (3) basic subscriber information for the Google account(s) associated with each device.

38.     The proposed warrant sets forth a multi-step process whereby the government will obtain the information described above. Specifically, as described in Attachment B.I:

    a.  Using Location History data, Google will identify those devices that it calculated were or could have been (based on the associated margin of error for the estimated latitude/longitude point) within the Target Location described in Attachment A during the time period described in Attachment A. For each device, Google will provide a unique device ID assigned by Google and its location coordinates along with the associated timestamp(s), margin(s) of error for the coordinates (*i.e,.* "maps display radius"), and source(s) from which the location data was derived (*e.g.*, GPS, wi-fi, bluetooth), if available. Google will not, in this step, provide the Google account identifiers (*e.g.,* example@gmail.com) associated with the devices or basic subscriber information for those accounts to the government.

12

b. The government will identify to Google the devices appearing on the list produced in step 1 for which it seeks the Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices.

c. Google will then disclose to the government the Google account identifier associated with the devices identified by the government, along with basic subscriber information for those accounts.

39. This process furthers efficiency and privacy by allowing for the possibility that the government, upon reviewing contextual information for all devices identified by Google, may be able to determine that one or more devices associated with a Google account (and the associated basic subscriber information) are likely to be of heightened evidentiary value and warrant further investigation before the records of other accounts in use in the area are disclosed to the government.

## CONCLUSION

40. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

41. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

13

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) Location History data, sourced from information including GPS data and information about visible wi-fi points and Bluetooth beacons transmitted from devices to Google, reflecting devices that Google calculated were or could have been (as indicated by margin of error, *i.e.,* "maps display radius") located within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive Location History data.

### Initial Search Parameters Location 1

- Date: April 3, 2021- April 4, 2021
- Time Period: 11:00PM (April 3rd) to 1:00AM (April 4th) (CST)
- Target Location:   Geographical area identified as:
    - (1) 43.101597, -88.060089; (2) 43.101597, -88.059378; (3) 43.101092, -88.059364; (4) 43.101067, -88.060042

Also approximately depicted using the following image:



<u>Initial Search Parameters Location 2</u>

- Date: April 6, 2021
- Time Period: 11:35AM to 11:45AM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.067758, -87.947258; (2) 43.067778, -87.946372; (3) 43.067169, -87.946389; (4) 43.067153, -87.947239

  Also approximately depicted using the following image:



15

<u>Initial Search Parameters Location 3</u>

- Date: April 6, 2021
- Time Period: 11:45AM to 1:00PM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.0734838, -87.961169; (2) 43.073475, -87.960069; (3) 43.072847, -87.960075; (4) 43.072847, -87.961111

  Also approximately depicted using the following image:



Case 2:21-mj-00110-WED   Filed 04/27/21   Page 17 of 25   Document 1

<u>Initial Search Parameters Location 4</u>

- Date: April 6, 2021
- Time Period: 12:50PM to 1:05PM (CST)
- Target Location: Geographical area identified as:
  (1) 43.075208, -87.970953; (2) 43.075189, -87.969889; (3) 43.074611, -87.969994; (4) 43.074664, -87.970942

Also approximately depicted using the following image:



- Date: April 6, 2021
- Time Period: 8:30PM to 9:15PM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.087097, -87.957972; (2) 43.087089, -87.957094; (3) 43.086286, -87.957094; (4) 43.086244, -87.957978

  Also approximately depicted using the following image:



Initial Search Parameters Location 6

- Date: April 13, 2021
- Time Period: 12:10PM to 12:40PM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.003417, -87.929183; (2) 43.003389, -87.928461; (3) 43.002858, -87.928481; (4) 43.002878, -87.929189

     Also approximately depicted using the following image:



Case 2:21-mj-00110-WED   Filed 04/27/21   Page 20 of 25   Document 1

Initial Search Parameters Location 7

- Date: April 14, 2021
- Time Period: 10:10AM to 10:25AM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.076078, -87.909436; (2) 43.076061, -87.907775; (3) 43.07485, -87.907775; (4) 43.074864, -87.909486

  Also approximately depicted using the following image:



Case 2:21-mj-00110-WED   Filed 04/27/21   Page 21 of 25   Document 1

Initial Search Parameters Location 8

- Date: April 18, 2021
- Time Period: 2:25PM to 2:40PM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.039325, -87.941075; (2) 43.039325, -87.940489; (3) 43.038617, -87.940483; (4) 43.038608, -87.941158

  Also approximately depicted using the following image:



<u>Initial Search Parameters Location 9</u>

- Date: April 18, 2021
- Time Period: 5:15PM to 5:30PM (CST)
- Target Location:   Geographical area identified as:
  (1) 43.016747, -88.000667; (2) 43.01675, -88.000131; (3) 43.016275, -88.000142; (4) 43.016272, -88.000631

  Also approximately depicted using the following image:



Google is further ordered to disclose the above information to the Government within 10 days of the issuance of this warrant.

## ATTACHMENT B

### Particular Items to Be Seized

**I. Information to be disclosed by Google**

The information described in Attachment A, via the following process:

1.     Google shall query location history data based on the Initial Search Parameters specified in Attachment A. For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (*i.e.*, "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List").

2.     The government shall review the Device List and identify to Google the devices about which it seeks to obtain Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices.

3.     Google shall disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with each device ID appearing on the Device List about which the government inquires.

**II. Information to Be Seized**

All information described above in Section I that constitutes evidence of violations of Title 18 United States Code, Section 1951(a) (Hobbs Acts robbery); Title 18, United States Code, Section 924(c)(1)(A)(ii) (Brandishing a firearm during a crime of violence); Title 18, United States Code, Section 844(i) (Use of fire to damage property used in interstate commerce); Title 18, United States Code, Section 844(h) (Use of fire in furtherance of a Federal felony); and

23

Title 18, U.S.C., Section 2(a) (Aiding and abetting), involving Lamont W. Chappell and other unknown persons.